**EXHIBIT 1**

**(Revised Proposed Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Rockport Company, LLC, *et al.*,[1] | Case No. 23-10774 (BLS) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket Nos. 17, 18, 90, & 95** |

**ORDER (A) AUTHORIZING THE DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT, (B) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, INCLUDING THE DEBTORS' DESIGNATION OF THE STALKING HORSE BIDDER AND THE BID PROTECTIONS, (C) APPROVING THE PROCEDURES TO DESIGNATE STALKING HORSE BIDDER(S), (D) SCHEDULING AUCTION FOR, AND HEARING TO, APPROVE THE SALE, (E) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION AND SALE HEARING, (F) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (G) APPROVING FORM AND MANNER OF NOTICE THEREOF, (H) APPROVING REQUEST FOR APPOINTMENT OF A CONSUMER PRIVACY OMBUDSMAN, AND (I) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Authorizing Procedures to Designate Stalking Horse Bidder(s), (C) Scheduling an Auction for, and Hearing to, Approve the Sale, (D) Approving Form and Manner of Notice of Auction, Sale, and Sale Hearing, (E) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (F) Approving Form and Manner of Notice Thereof, and (G) Granting Related Relief; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances and Other Interests, (B) the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: The Rockport Company, LLC (5670); CB Marathon Midco, LLC (6498); Rockport IP Holdings, LLC (6809); CB Footwear Services, LLC (6826); and Rockport UK Holdings Ltd. (3108). The Debtors' mailing address is: 1220 Washington Street, West Newton, MA 02465.

10894478v.6

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C)*

*Granting Related Relief* [Docket No. 17]  (the "Initial Bidding Procedures Motion")[2] and the

*Supplement to the Debtors' Motion For Entry of (I) an Order (A) Approving Bidding Procedures*

*In Connection with the Sale Of Substantially All of the Debtors' Assets, (B) Authorizing*

*Procedures to Designate Stalking Horse Bidder(s), (C) Scheduling an Auction for, and Hearing*

*to, Approve the Sale, (D) Approving Form and Manner of Notice of Auction, Sale, and Sale*

*Hearing, (E) Approving Procedures for the Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases, (F) Approving Form and Manner of Notice Thereof, and (G)*

*Granting Related Relief; and (II) An Order Authorizing and Approving (A) The Sale Of*

*Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances*

*and Other Interests, (B) the Assumption and Assignment Of Certain Executory Contracts and*

*Unexpired Leases, and (C) Granting Related Relief [Docket No. 17] Seeking (I) Approval of (A)*

*The Debtors' Designation of the Stalking Horse Bidder For The Debtors' Assets as Set Forth in*

*the Stalking Horse APA, (B) the Debtors' Entry Into the Stalking Horse Agreement, and (C) the*

*Bid Protections, (II) Requesting Appointment of Consumer Privacy Ombudsman, and (Iii)*

*Granting Related Relief* [Docket No. 90] (the "Supplement," collectively with the Initial Bidding

Procedures Motion, the "Bidding Procedures Motion") of the above-captioned debtors (the

"Debtors"), for entry of an order (this "Order"), pursuant to Sections 105, 332, 363, 365, 503 and

507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1,

(i) approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"),

pursuant to which the Debtors will solicit and select the highest or otherwise best offer for the sale

(the "Sale") of all or substantially all or a portion of the Assets; (ii) authorizing the Debtors to

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Supplement or the Bidding Procedures Motion, as applicable.

designate one or more Stalking Horse Bidders for some or all of the Assets, and scheduling a hearing to consider approval of such Stalking Horse Bid(s); (iii) scheduling an auction (the "Auction") and the hearing to consider the approval of the Sale (the "Sale Hearing"); (iv) approving the forms of notice and notice procedures related to the Auction, Sale and Sale Hearing (the "Notice Procedures"); (v) authorizing certain procedures (the "Assignment Procedures") related to the assumption and assignment of certain executory contracts and unexpired leases (the "Designated Contracts") in connection with the Sale, (vi) approving form and manner of notice of the Assignment Procedures; (vii) approving the Debtors' entry into a Stalking Horse APA, (vii) approving bid protections, (ix) approving the appointment of a consumer privacy ombudsman (x) granting related relief; all as more fully described in the Bidding Procedures Bidding Procedures Motion; and the Court having reviewed and considered the Bidding Procedures Motion; and the Court having held a hearing on the Bidding Procedures Motion (the "Bidding Procedures Hearing"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

## IT IS FOUND AND DETERMINED THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     The predicates for the relief granted herein are (i) sections 105, 332, 363, 365, and 503 of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6004 and (iii) Rules 2002-1, 6004-1 and 9006-1 of the Local Rules; and (iv) the Bidding Procedures Motion.

C.     This Court has jurisdiction to consider the Bidding Procedures Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of the Debtors' Chapter 11 Cases and the Bidding Procedures Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.     The Debtors' notice of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Hearing and the proposed entry of this Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules or is otherwise appropriate under the circumstances, and (iii) adequate and sufficient, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Bidding Procedures Motion has been afforded to all interested persons and entities, including, but not limited to, the Sale Notice Parties.

E.     The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable and appropriate and are designed to maximize creditor recoveries from a sale of the Assets.

F.     The Bidding Procedures were negotiated in good faith and at arm's-length.

G.     The Debtors have demonstrated a compelling and sound business justification for the Bankruptcy Court to enter this Order and, thereby: (i) approve the Bidding Procedures, attached hereto as **Exhibit 1**, pursuant to which the Debtors will solicit and select the highest or otherwise best offer for the Sale of all or substantially all or a portion of the Assets; (ii) approve the Stalking Horse Designation Procedures; (iii) schedule the Auction and the Sale Hearing;

4

(iv) approve the Notice Procedures; (v) authorize the Assignment Procedures related to the assumption and assignment of the Designated Contracts in connection with the Sale, (vi) approve form and manner of notice of the Assignment Procedures; and (vii) grant related relief. Such compelling and sound business justification, as set forth in the Bidding Procedures Motion and on the record at the Bidding Procedures Hearing, if any, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

H.     Additionally, the Stalking Horse Break-Up Fee and Expense Reimbursement (each, as defined in the Stalking Horse APA, and collectively, the "Bid Protections"): (i) provide substantial benefit to the Debtors' estates by eliciting the Stalking Horse Bid, which has established a "floor" for other potential bidders for the Acquired Assets, thereby ensuring that the Debtors receive the highest or otherwise best bid for the Acquired Assets and (ii) are reasonable under the circumstances and reflect the Debtors' sound business judgment, and (iii) constitute actual and necessary costs of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

I.     Additionally, the Stalking Horse is not an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and is not an equity holder or affiliate of, or lender to, any of the Debtors, and does not have any connection to the Debtors other than those that arise from its Stalking Horse Bid.

J.     The Debtors have designated the Stalking Horse Bidder and the Stalking Horse Bid in accordance with the Initial Bidding Procedures Motion, and the Debtors and the Stalking Horse Bidder have not engaged in any collusion with respect to the bidding process.

10894478v.6

K.     The legal and factual bases set forth in the Bidding Procedures Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest.

L.     The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2** and the Potential Assignment Notice attached hereto as **Exhibit 3**) are reasonably calculated to provide each Counterparty to the Designated Contracts with proper notice of the potential assignment of such Designated Contracts to the Successful Bidder(s) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each such Counterparty assert any objection to the proposed Cure Cost or otherwise be barred from asserting claims arising out of or related to the Designated Contract following the assumption and assignment thereof.

**IT IS HEREBY ORDERED THAT:**

1.     The Bidding Procedures Motion is granted as set forth herein.

2.     Any objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled, and denied on the merits with prejudice.

3.     The Debtors are authorized to proceed with the sale transaction in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Deadline | Action |
|---|---|
| **Three (3) Business Days after the entry of this Order** | Deadline for Debtors to file and serve (i) Sale Notice, and (ii) Potential Assignment Notice |

10894478v.6

| | |
|---|---|
| **4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days after the date on which the Potential Assignment Notice was filed with the Court** | Assignment Objection |
| **July 7, 2023** | Deadline for Debtors to file a form of Sale Order |
| **July 13, 2023, at 4:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **July 14, 2023, at 4:00 p.m. (prevailing Eastern Time)** | Sale Objection Deadline |
| **July 17, 2023, at 10:00 a.m. (prevailing Eastern Time)** | Auction |
| **One business day after the conclusion of the Auction** | Deadline for Debtors to file and serve Notice of Auction Results |
| **July 20, 2023, at 4:00 p.m. (prevailing Eastern Time)** | Supplemental Sale Objection Deadline |
| **July 21, 2023, at 12:00 p.m. (prevailing Eastern Time)** | Debtors' Reply Deadline to Sale Objections and Supplemental Sale Objections |
| **July 25, 2023, at [**] a.m. (prevailing Eastern Time)** | Sale Hearing |
| **July 28, 2023** | Deadline to Consummate Approved Sale |

4.     The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Order and the Debtors are authorized, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.     The Debtors shall file and serve a form of proposed Sale Order, in form and substance satisfactory to the DIP Agents in their reasonable discretion, no later than **July 7, 2023**.

6.     <u>Bid Deadline</u>. As further described in the Bidding Procedures, the Bid Deadline shall be at **4:00 p.m. (prevailing Eastern Time) on July 13, 2023.**  The Debtors shall notify

Potential Bidders of their status as Qualified Bidders no later than **4:00 p.m. (prevailing Eastern Time) on July 14, 2023.** In addition, prior to the Auction, the Debtors will provide all Qualified Bidders (including any Stalking Horse Bidders) copies of each Qualified Bid made for the Assets; and to (i) Wells Fargo Bank, National Association, as agent (the "Revolving Loan Agent"); and (ii) Callodine Commercial Finance, LLC ("Callodine") as agent (the "DIP TL Agent", collectively with the Revolving Loan Agent, the "DIP Agents"); and (iii) the Official Committee of Unsecured Creditor (the "Committee", and collectively with the DIP Agents and the Subordinated Agent, the "Consultation Parties").

7.  Auction. The Auction, if any, will be conducted on **July 17, 2023, at 10:00 a.m. (prevailing Eastern Time)**, either (i) in person at the office of Potter Anderson & Corroon LLP ("Potter Anderson") at 1313 North Market Street, Wilmington, DE 19801, or (ii) virtually or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties. The Debtors shall file a notice of any change in the date, time, or location of the Auction. If held, the Auction proceedings shall be transcribed, or audio recorded.

8.  If no Qualified Bids with respect to the Assets other than the Stalking Horse Bid are received, or in the event no Stalking Horse Bid is designated, on or before the Bid Deadline, the Debtors may, at their option, and in consultation with the Consultation Parties, cancel or adjourn the Auction with respect to the Assets, and instead may seek approval of the sale of the Assets pursuant to such Qualified Bid at the Sale Hearing.

9.  The form of Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.

10.  Within three (3) Business Days after entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail

(or by e-mail, if the party has consented to such service) upon: (i) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda Casey (Linda.Casey@usdoj.gov); (ii) counsel to the Revolving Loan Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn: Jonathan Helfat, Valerie Mason, and Daniel Fiorillo, email: jhelfat@otterbourg.com, vmason@otterbourg.com, and dfiorillo@otterbourg.com); (iii) counsel to the DIP TL Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060 (Attn: Jennifer Feldsher and Matthew Furlong, email: jennifer.feldsher@morganlewis.com and matthew.furlong@morganlewis.com); (iv) Counsel to Reef Lifestyle, LLC, Ropes & Gray LLP, 1211 Avenue of Americas, New York, New York (Attn: Gregg M. Galardi email: gregg.galaradi@ropesgray.com); (v) counsel to the Stalking Horse Bidder, DLA Piper LLP, 444 West Lake Street, Suite 900, Chicago, Illinois (Attn: Richard A. Chesley email: richard.chesley@us.dlapiper.com); (vi) proposed counsel to the Committee, (a) Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor New York, NY 10019 (Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah Carnes (scarnes@coleschotz.com)) and (b) Cole Schotz P.C., 500 Delaware Avenue, # 1410, Wilmington, Delaware 19801) (Attn: Justin R. Alberto (jalberto@coleschotz.com)); (vii) all persons or entities known to have expressed an interest in a transaction with respect to the Assets during the past six (6) months; (viii) all Counterparties to any Designated Contracts; (ix) all parties with liens or interests in, on or against any of the Debtors' assets; (x) all affected federal, state and local governmental regulatory and taxing authorities, including the Internal Revenue Service; (xi) all known holders of claims against and equity interests in the Debtors; (xii) all parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002 (the "2002 List"); and (xiii) to the extent not already

9

included above, all parties in interest listed on the Debtors' creditor matrix (collectively, the "Sale Notice Parties").

11. <u>Publication Notice</u>. As soon as practicable but no later than five (5) Business Days after the entry of this Order, the Debtors shall cause the information contained in the Sale Notice, with such modifications as may be appropriate for purposes of publication, to be published once in the national edition of the USA Today National Edition or New York Times National Edition, or an equivalent publication (the "Publication Notice") in substantially the same form as the Sale Notice.

12. Service of the Sale Notice on the Sale Notice Parties and Publication Notice in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

13. Promptly following the Auction, if any, but in any event no later than one (1) Business Day following the conclusion of the Auction, the Debtors shall file a notice of the Successful Bid(s) and Back-up Bid(s), if any (the "Notice of Auction Results"), with the Court. The Notice of Auction Results will (i) identify each Successful Bidder and each Backup Bidder; (ii) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bid, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Information Website; and (iii) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

14. <u>Sale Objections</u>. Objections to the Sale (other than objections related to the conduct of the Auction (if held) and/or the specific identity of a Successful Bidder other than any Stalking Horse Bidders) must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof,

10

(c) be filed with the Court by no later than **4:00 p.m. (prevailing Eastern Time) on July 14, 2023**
(the "Sale Objection Deadline"), and (d) be served on ((i) proposed counsel to the Debtors, Potter
Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801-6108,
Attn: M. Blake Cleary and L. Katherine Good email: bcleary@potteranderson.com and
kgood@potteranderson.com; (ii) counsel to the Revolving Loan Agent, Otterbourg P.C., 230 Park
Avenue, New York, NY 10169-0075 (Attn:  Jonathan Helfat, Valerie Mason, and Daniel Fiorillo,
email:    jhelfat@otterbourg.com,    vmason@otterbourg.com,    and   dfiorillo@otterbourg.com);
(iii) counsel to the DIP TL Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York,
NY    10178-0060    (Attn:    Jennifer    Feldsher    and    Matthew    Furlong,    email:
jennifer.feldsher@morganlewis.com  and  matthew.furlong@morganlewis.com);  (iv)  Counsel  to
Reef Lifestyle, LLC, Ropes & Gray LLP, 1211 Avenue of Americas, New York,  New York (Attn:
Gregg  M.  Galardi  email:  gregg.galaradi@ropesgray.com);  (v)  counsel  to  the  Stalking  Horse
Bidder, DLA Piper LLP, 444 West Lake Street, Suite 900, Chicago, Illinois (Attn: Richard A.
Chesley  email:  richard.chesley@us.dlapiper.com);  and  (vi)  proposed  counsel  to  the  Committee,
(a) Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor New York, NY 10019 (Attn: Seth
Van Aalten (svanaalten@coleschotz.com) and Sarah Carnes (scarnes@coleschotz.com)) and (b)
Cole Schotz P.C., 500 Delaware Avenue, # 1410, Wilmington, Delaware 19801) (Attn: Justin R.
Alberto (jalberto@coleschotz.com)); (the "Objection Notice Parties").

15.    Supplemental Sale Objections. Objections to the conduct of the Auction (if held),
the specific identity of the Successful Bidder (other than any Stalking Horse Bidders), or adequate
assurance of future performance provided by a Successful Bidder (other than any Stalking Horse
Bidder) must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be
filed with the Court by no later than **4:00 p.m. (prevailing Eastern Time)** on **July 20, 2023** (the

10894478v.6

"Supplemental Sale Objection Deadline"), and (d) be served on the Objection Notice Parties and the Successful Bidder.

16.    Sale Hearing. The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19801, on **July 25, 2023 at [_____ _.m]. (prevailing Eastern Time)** or such other date and time that the Court may later direct; *provided, however,* that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

17.    Stalking Horse Designation Procedures.   The Stalking Horse Designation Procedures are hereby approved.  Any Stalking Horse Bidder shall be considered a Qualified Bidder, and any Stalking Horse Bid shall be considered a Qualified Bid, for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by such Stalking Horse Bidder.  The Debtors, in consultation with the Consultation Parties, have designated a Stalking Horse Bids for the Assets, in whole or in part, in each case, subject to higher or otherwise better offers at the Auction.

18.    Stalking Horse Protections.   The Debtors are hereby authorized to designate ABG-Regatta LLC as the Stalking Horse Bidder solely for the Acquired Assets.

19.    The Debtors are authorized, pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code, to enter into the Stalking Horse APA, which shall be binding and enforceable as between the Debtors and the Stalking Horse Bidder in accordance with its terms, subject to the results of the Auction and entry of the applicable order approving such sale (a "Sale Order"). The Stalking Horse APA and any related agreements, documents or instruments may be modified, amended or supplemented by the parties thereto, in consultation with the Consultation Parties, in

12

accordance with the terms thereof, without further order of the Court, provided that no such modifications, amendments or supplements are adverse to the Debtors' estates and provided further that all such modifications, amendments and supplements shall be filed with the Court.

20.    The Break-Up Fee and Expense Reimbursement are approved.

21.    No entity, other than a Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment.

22.    Notwithstanding anything to the contrary in the Stalking Horse APA, the Break-Up Fee and the Expense Reimbursement shall constitute allowed superpriority Administrative Expense Claims pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code with priority over all other administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code, provided, that (A) the priority of such superpriority Administrative Expense Claims shall be junior to (x) the Carve-Out Expenses (as defined in the Interim DIP Order [Docket No. 75] and all allowed Administrative Expense Claims for fees and expenses of persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code, and (y) Claims arising under the DIP Financing Agreement, and (B) the Break-Up Fee and Expense Reimbursement shall be payable from the proceeds of an Alternative Transaction (as defined the Stalking Horse APA).  ABG-Regatta LLC rights to the Break-Up Fee or the Expense Reimbursement, as applicable, pursuant to Section 5.3(f) of the Stalking Horse APA and subject to Section 2.4(d)(iii) of the Stalking Horse APA shall be the sole and exclusive remedy of ABG-Regatta LLC against the Debtors and any of their respective Affiliates for any Liability, damage or other loss resulting from, the termination of the Stalking Horse APA, breach of any representation, warranty covenant or agreement contained herein or the failure of the transactions contemplated hereby to be consummated, and none of ABG-Regatta LLC nor any of its Affiliates

13

shall have any other remedy or cause of action under or relating to the Stalking Horse APA or any applicable law.

23.     Subject to the entry of the applicable Sale Order, the Debtors and the Stalking Horse Bidder are granted all rights and remedies provided to them under the Stalking Horse APA, including, without limitation, the right to specifically enforce the Stalking Horse APA (including with respect to the Bid Protections) in accordance with its terms, except as modified by this Order.

24.     For the avoidance of doubt and notwithstanding anything to the contrary contained in this Order, this Order does not approve the sale of the Acquired Assets to the Stalking Horse Bidder, such approval and authorization (if any) to be considered at the Sale Hearing and all rights of all parties in interest to object to such approval and authorization are reserved.

25.     Assignment Procedures.  The Assignment Procedures set forth herein are hereby approved.

26.     As soon as reasonably practicable, but in no event later than three (3) Business Days after entry of this Order, the Debtors shall file with the Bankruptcy Court a notice (the "Potential Assignment Notice") that identifies (i) each of the Designated Contracts that may be assumed and assigned in connection with the Sale, including the name of each Counterparty and (ii) the proposed Cure Cost with respect to each Designated Contract.  The Potential Assignment Notice shall also be served on each Counterparty by first class mail (or by e-mail if the party has consented to such service).

27.     In the event that any contract or lease was not identified on the Potential Assignment Notice or if previously stated Cure Costs are modified the Debtors will file a supplemental Potential Assignment Notice (each, a "Supplemental Potential Assignment Notice") as soon as practical.  Each Supplemental Potential Assignment Notice will include the same

14

information with respect to the applicable Designated Contract as is required to be included in the Potential Assignment Notice, and shall be served by first class mail (or by email if the party has consented to such service).

28.     <u>Assignment Objection Deadlines</u>. Any Counterparty may object to the proposed assumption or assignment of its Designated Contract, the Debtors' proposed Cure Costs, if any, or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance (an "<u>Assignment Objection</u>").  All Assignment Objections must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure defaults under the relevant Designated Contract, (D) be filed by **no later than the date that is fourteen (14) calendar days after the date on which the Potential Assignment Notice was filed with the Court and served,** and (E) be served on:  proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801-6108, Attn: M. Blake Cleary and L. Katherine Good email: bcleary@potteranderson.com and kgood@potteranderson.com; (ii) counsel to the Revolving Loan Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn:  Jonathan Helfat, Valerie Mason, and Daniel Fiorillo,       email:       jhelfat@otterbourg.com,       vmason@otterbourg.com,       and dfiorillo@otterbourg.com); (iii) counsel to the DIP TL Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060 (Attn:  Jennifer Feldsher and Matthew Furlong, email:     jennifer.feldsher@morganlewis.com   and   matthew.furlong@morganlewis.com);   (iv) Counsel to Reef Lifestyle, LLC, Ropes & Gray LLP, 1211 Avenue of Americas, New York,  New York (Attn: Gregg M. Galardi email: gregg.galaradi@ropesgray.com); (v) counsel to the Stalking Horse Bidder, DLA Piper LLP, 444 West Lake Street, Suite 900, Chicago, Illinois (Attn: Richard

A. Chesley email: richard.chesley@us.dlapiper.com); and (vi) proposed counsel to the Committee, (a) Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor New York, NY 10019 (Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah Carnes (scarnes@coleschotz.com)) and (b) Cole Schotz P.C., 500 Delaware Avenue, # 1410, Wilmington, Delaware 19801) (Attn: Justin R. Alberto (jalberto@coleschotz.com)) (collectively, the "Assignment Objection Notice Parties").

29.     Assignment Objections. If a Counterparty files a timely Assignment Objection, such objection shall be heard at the Sale Hearing or such later date as may be determined by the Court, or that the Debtors, the Successful Bidder, and the objecting Counterparty may agree (subject to the Court's calendar); *provided, however*, that if an Assignment Objection relates solely to the Cure Cost, the Designated Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the Cure Cost asserted by the Counterparty (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication or the parties consensual resolution of the Assignment Objection.

30.     Failure to File Timely Assignment Objection. If a Counterparty fails to file with the Court and serve on the Assignment Objection Notice Parties a timely Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Designated Contract, and notwithstanding anything to the contrary in the Designated Contract, or any other document, the Cure Costs set forth in the Potential Assignment Notice or the Supplemental Potential Assignment Notice (as defined below) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Designated Contract under Section 365(b) of the Bankruptcy Code arising out of or related to the Designated Contract following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise, and the Counterparty

16

shall be forever barred from asserting any additional cure or other pre-assignment amounts with respect to such Designated Contract against the Debtors, the Successful Bidder or the property of any of them.

31.     Unless otherwise provided in the Asset Purchase Agreement, at any time until one (1) day prior to the Closing Date, the Successful Bidder may elect to amend the Designated Contracts Schedule attached to the Asset Purchase Agreement to remove any Designated Contract(s).  Any Designated Contract that remains on the Designated Contracts Schedule as of the Closing Date shall be assumed by the Debtors and assigned to the Successful Bidder as part of the Sale.  All Contracts and Leases that are not on the Designated Contracts Schedule shall be deemed "Excluded Contracts" under the Asset Purchase Agreement.

32.     Subject in all respects to the Bankruptcy Code, other applicable law, and the satisfaction in cash or assumption of claims secured by senior liens, if any, the Revolving Loan Secured Parties (each in their respective capacities under the Pre-Petition Revolving Loan Documents) (as defined in the Interim DIP Order) and the Term Loan Secured Parties (as defined in the Interim DIP Order) (each a "Secured Party" and collectively, the "Secured Parties") may, subject to section 363(k) of the Bankruptcy Code, credit bid all or any of the respective portion of their outstanding Obligations (as defined in the DIP Order) (the "Credit Bid"); *provided*, *however* the Secured Parties' ability to Credit Bid shall be expressly subject to the challenge rights as set forth in any final order approving postpetition financing.  Any Credit Bid shall be a Qualified Bid without the need to provide any Deposit, and the Secured Parties shall be a Qualified Bidder in connection with any such Credit Bid, and any such Credit Bid shall be a Qualified Bid.

33.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures or otherwise: (i) the rights of the DIP Agents and the Secured Parties to consent to the

sale of any portion of their Collateral (as defined in the DIP Order) shall be expressly reserved and not modified, waived or impaired in any way by this Order, and (ii) nothing in this Order shall amend, modify, or impair any provision of the DIP Order.

34. Notwithstanding the foregoing, anything herein, or in the Bidding Procedures, the Debtors will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtors if such party is an active bidder for the Assets at the applicable time. If a member of the Committee is a Potential Bidder or a Qualified Bidder, the Committee shall maintain its consultation rights as a Consultation Party, provided that the Committee excludes the applicable Committee member from any discussions or deliberations regarding a transaction involving the relevant Assets and shall not provide any confidential information regarding the Assets or any other Prospective Bidder or Qualified Bid or otherwise involving the Sale Process to such Committee member. Notwithstanding the foregoing, upon written notice (which may be by email) to the Debtors by such Secured Party or Committee member, or express confirmation on the record during the Auction, of such Secured Party's or Committee member's withdrawal as a bidder for the Assets, the Secured Party's or Committee member's rights as a Consultation Party (either directly or as a member of the Committee) shall be restored.

35. <u>Appointment of a Consumer Privacy Ombudsman</u>. The U.S. Trustee is hereby directed to appoint a consumer privacy ombudsman in these chapter 11 cases in accordance with section 332(a) of the Bankruptcy Code within three (3) business days of this Order.

36. The Debtors are hereby directed to provide the consumer privacy ombudsman notice once the Debtors receive a bona fide offer for PII for which they would seek Court approval, and the consumer privacy ombudsman shall perform no services until so advised.

10894478v.6

37.     The consumer privacy ombudsman shall at all times comply with section 332(c) of the Bankruptcy Code.

38.     The consumer privacy ombudsman shall be compensated pursuant to section 330 of the Bankruptcy Code upon approval by the Court of a request for compensation.

39.     Notice of the Supplement as described therein shall be deemed good and sufficient notice of such Supplement, satisfying the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

40.     Nothing in this Order shall modify the rights of the Subordinated Noteholders upon the Senior Debtholder's receiving Payment in Full (as the term is defined in the Subordination and Intercreditor Agreement).

41.     This Order shall be binding on the Debtors, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

42.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall, to the extent applicable, be effective and enforceable immediately upon entry hereof.

44.     To the extent any of the deadlines set forth in this Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Order shall govern.

45.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

46.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

# Exhibit 1

## Bidding Procedures

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Rockport Company, LLC, *et al.*,[1] | Case No. 23-10774 (BLS) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the proposed sale of all or substantially all of the assets (collectively, the "Assets") owned by the above captioned debtors and debtors in possession (the "Debtors"). On June 14, 2023 the Debtors filed these Chapter 11 Cases which are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), case number 23-10774.

By the motion (the "Motion"),[2] dated June 15, 2023, the Debtors sought, among other things, approval of the Bidding Procedures for soliciting bids for, conducting an auction (the "Auction"), and consummating a sale of all or substantially all of the Assets (the "Sale"). *See* Dkt No. 17.

On [ ], 2023, the Bankruptcy Court entered the *Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (B) Authorizing Procedures to Designate Stalking Horse Bidder(s), (C) Scheduling Auction for, and Hearing to, Approve the Sale, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (F) Approving Form and Manner of Notice Thereof, and (G) Granting Related Relief* (the "Bidding Procedures Order") *See* Dkt. No. [ ].

## I. ASSETS TO BE SOLD

The Debtors seek to sell substantially all of its assets. The sale of the Assets is on an "as is, where is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by the Debtors, its affiliates or their respective representatives, except to the extent set forth in any Stalking Horse APA or the purchase agreement of such other Successful Bidder (as defined below) and as approved by the Bankruptcy Court. Except as otherwise provided in such approved purchase agreement, all of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: The Rockport Company, LLC (5670); CB Marathon Midco, LLC (6498); Rockport IP Holdings, LLC (6809); CB Footwear Services, LLC (6826); and Rockport UK Holdings Ltd. (3108). The Debtors' mailing address is: 1220 Washington Street, West Newton, MA 02465.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion or any Stalking Horse APA, as applicable.

10894478v.6

Debtors' right, title and interest in and to each Asset to be acquired shall be sold free and clear of all liens, claims, interests and encumbrances (other than permitted liens), with such liens, claims, interests and encumbrances to attach to the proceeds of the Sale.

## II. THE BIDDING PROCEDURES

To ensure that the Debtors receive the maximum value for the Assets, any Stalking Horse APA is subject to higher or better offers, and, as such, any Stalking Horse APA will serve as the "stalking-horse" bid for the Assets.

### A. Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Bankruptcy Court, to participate in the bidding process, prior to the Bid Deadline (as defined below), each person other than the Stalking Horse Bidder, who wishes to participate in the bidding process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined below):

        (i)      a written disclosure of the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid; and

        (ii)     an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors (without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions).

A Potential Bidder that delivers the documents and information described above or that the Debtors determines, in consultation with Wells Fargo Bank, National Association, as agent (the "Revolving Loan Agent"); and Calldine Commercial Finance, LLC ("Calldine") as agent (the "DIP TL Agent", collectively with the ABL Agent, the "DIP Agents"); and the Official Committee of Unsecured Creditors (the "Committee," and collectively with the DIP Agents and the Subordinated Agent, the "Consultation Parties"), is able to consummate the Sale, and whose Qualified Bid is received by the Debtors no later than the Bid Deadline is deemed qualified (a "Qualified Bidder").

For all purposes under the Bidding Procedures, the Stalking Horse Bidder shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid (as defined below) without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Bidder.

### B. Due Diligence

The Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors deem appropriate, which may include differentiations between the diligence provided to strategic and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information. The due diligence period will extend through and including the Bid Deadline. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtors.

10894478v.6

### C.  **Provisions Governing Qualified Bids**

A bid will be considered a "Qualified Bid" only if the bid is submitted by a Qualified Bidder and the Debtors determine, in consultation with the Consultation Parties, such bid complies with all of the following:

a.  it is received by the Notice Parties prior to the Bid Deadline;

b.  it states that the applicable Qualified Bidder offers to purchase, in cash, all or a portion of the Assets upon the terms and conditions that the Debtors, in consultation with the Consultation Parties, reasonably determines are no less favorable than those set forth in any Stalking Horse APA (which determination may be made by considering bids submitted by more than one Qualified Bidder in combination);

c.  it includes a signed writing stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder (each, as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the Sale to the Successful Bidder or the Back-Up Bidder and (ii) the date that is thirty (30) days after the Sale Hearing;

d.  it includes confirmation that there is no condition precedent to the Qualified Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the submission of the bid;

e.  it provides the date by which the Qualified Bidder intends to close the Sale; provided, however, that the proposed closing date is in compliance with the milestones set forth in any final order approving postpetition financing.

f.  it contains no due diligence or financing contingencies of any kind;

g.  it includes a duly authorized and executed copy of an asset purchase agreement, which includes the purchase price for the Assets, as allocated for each asset category and in the aggregate, expressed in U.S. Dollars which is equal to or greater than the Purchase Price in the Stalking Horse APA, *plus* the Break-Up Fee, *plus* the Expense Reimbursement, *plus* $1,000,000.00 (the "Initial Overbid"), together with all exhibits and schedules thereto, together with a blackline copy to show any modifications to any Stalking Horse APA (a "Competing Purchase Agreement");

h.  a Qualified Bid must include a proposed sale order (each, a "Proposed Sale Order") based on the Debtors' proposed sale order.   A Qualified Bid must also include a blackline copy of the Proposed Sale Order to show any proposed modifications to the Debtors' proposed sale order.

i.  it specifies the liabilities proposed to be paid or assumed by such Qualified Bid;

j.  it includes financial statements or other written evidence, including (if applicable) a firm, irrevocable commitment for financing, establishing the ability of the Qualified Bidder to consummate the proposed Sale and pay the Purchase Price in cash, such as will allow the Debtors, in consultation with the Consultation Parties, to make a

reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Competing Purchase Agreement;

k.  it offers to purchase all or substantially all of the Assets or only a portion of the Assets; provided, however, that a bid that offers to purchase only a portion of the Purchased Assets may only be a Qualified Bid to the extent that the value of such bid, in combination with the value of other bids for other Assets, equals or exceeds the Initial Overbid applicable to Qualified Bids for all or substantially all the Assets. The Debtors, in consultation with the Consultation Parties, may waive or modify the application of the Qualified Bid conditions in respect of bids for a portion of the Assets (other than the requirement that the value of any such Qualified Bid, in combination with the value of other bids for other Assets, equals or exceeds the Initial Overbid applicable to Qualified Bids for any or substantially all of the Purchased Assets), including, *inter alia,* the amount of the Good Faith Deposit (as defined below);

l.  it identifies with particularity the Designated Contracts the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related Cure Costs and the provision of adequate assurance of future performance to the Counterparties to such Designated Contracts;

m.  it states or otherwise estimates the types of transition services, if any, the Qualified Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Prospective Bidder's bid were selected as the Successful Bid for the applicable Assets;

n.  it includes an acknowledgement and representation that the bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Competing Purchase Agreement; and (d) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

o.  it includes evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Competing Purchase Agreement;

p.  it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to 10% of the cash portion of the purchase price provided for in the bid (a "Good Faith Deposit");

4

q. it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court; and

r. it contains such other information as may be reasonably requested by the Debtors, in consultation with the Consultation Parties.

If the value of a bid relative to any Stalking Horse Bid includes additional non-cash components, the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtors in better evaluating the competing bid.

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualified Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid.

As soon as reasonably practicable after the Bid Deadline, but not later than one day prior to the Auction the Debtors shall, after consulting with the Consultation Parties, notify each Qualified Bidder that has submitted a bid (other than the Stalking Horse Bidder) whether such Qualified Bidder's bid constitutes a Qualified Bid.

Within twenty-four (24) hours after receipt of any Qualified Bids, the Debtors will circulate such Qualified Bids to the Consultation Parties.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations set forth in the Competing Purchase Agreement. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a Potential Bidder is not a Qualified Bidder and that bid made by a Potential Bidder is not a Qualified Bid.

### D. <u>Credit Bidding</u>

Subject in all respects to the Bankruptcy Code, other applicable law, and the satisfaction in cash or assumption of claims secured by senior liens, if any, the Secured Parties may, subject to section 363(k) of the Bankruptcy Code, credit bid all or any of the respective portion of their outstanding Obligations (as defined in the DIP Order) (the "<u>Credit Bid</u>"); *provided*, *however*, the Secured Parties' ability to Credit Bid shall be expressly subject to the challenge rights as set forth in any final order approving postpetition financing. Any Credit Bid shall be a Qualified Bid without the need to provide any Deposit, and the Secured Parties shall be a Qualified Bidder in connection with any such Credit Bid, and any such Credit Bid shall be a Qualified Bid.

10894478v.6

### E. **Bid Deadline**

A Potential Bidder that desires to make a bid shall deliver written copies of its bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to the following parties (collectively, the "Notice Parties"): (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801-6108, Attn: M. Blake Cleary, Esq. and L. Katherine Good, Fax: (302) 658-1192 email: bcleary@potteranderson.com and kgood@potteranderson.com; (ii) counsel to the Revolving Loan Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn: Jonathan Helfat, Valerie Mason, and Daniel Fiorillo, email: jhelfat@otterbourg.com, vmason@otterbourg.com, and dfiorillo@otterbourg.com); (iii) counsel to the DIP TL Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060 (Attn: Jennifer Feldsher and Matthew Furlong, email: jennifer.feldsher@morganlewis.com and matthew.furlong@morganlewis.com); (iv) proposed counsel to the Committee, (a) Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor New York, NY 10019 (Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah Carnes (scarnes@coleschotz.com)) and (b) Cole Schotz P.C., 500 Delaware Avenue, # 1410, Wilmington, Delaware 19801) (Attn: Justin R. Alberto (jalberto@coleschotz.com)); and (v) proposed investment banker for the Debtors, James Doak (james.doak@millerbuckfire.com); Michael Kollender, (michael.kollender@stifel.com), Justine Mannering (manneringj@stifel.com) and Perry McCarthy (mccarthyp@stifel.com), so as to be received by the foregoing parties no later than **4:00 p.m. (prevailing Eastern Time) on July 13, 2023** (the "Bid Deadline").

### F. **Evaluation of Competing Bids**

A Qualified Bid will be valued by the Debtors, in consultation with the Consultation Parties, based upon several factors including, without limitation, (1) the amount of the Purchase Price provided by such bid, (2) the nature of the consideration provided by such bid, (3) the risks and timing associated with consummating such bid, (4) any proposed revisions to any Stalking Horse APA and/or the Proposed Sale Order, (5) whether any Qualified Bid contains a sufficient cash component to ensure that the Debtors' estates is not rendered administratively insolvent, and (6) any other factors deemed relevant by the Debtors, in consultation with the Consultation Parties.

In valuing any Qualified Bid and any Subsequent Bid (defined below), the Debtors and the Consultation Parties shall give the Stalking Horse Bidder credit for the amount of any Break-Up Fee and Expense Reimbursement as set forth in any Stalking Horse APA.

### G. **No Qualified Bids**

If the Debtors do not receive any Qualified Bids other than the Stalking Horse Bid, the Debtors will not conduct the Auction for the Assets, will file with the Court and cause to be published on the Debtors' case information website (located at https://dm.epiq11.com/Rockport) (the "Case Information Website"), within twenty-four hours after the Bid Deadline, a notice indicating that the Auction for the Assets has been canceled; *provided, however*, that the Debtors may, in their reasonable business judgment (after consulting with the Consultation Parties and the Stalking Horse Bidder), adjourn or reschedule the Auction; *provided further*, however, that any such adjournment will be in compliance with the milestones set forth in any final order approving postpetition financing.

10894478v.6

## H. <u>Auction Process</u>

If the Debtors receive one or more Qualified Bids, the Debtors will conduct the Auction, which shall take place at **<u>10:00 a.m. prevailing Eastern Time on July 17, 2023</u>**, or such other date and time as shall be timely communicated to all entities entitled to attend the Auction.  The Auction, which shall be recorded or transcribed, shall run in accordance with the following procedures:

    a. only the Debtors, any Stalking Horse Bidder, any other Qualified Bidder that have timely submitted a Qualified Bid, the Consultation Parties, and the advisors to each of the foregoing shall be permitted to participate the Auction, which will be either (i) in person at the office of Potter Anderson at 1313 North Market Street, Wilmington, DE 19801, or (ii) virtually or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties.  The Debtors shall file a notice of any change in the date, time, or location of the Auction.  For the avoidance of doubt, any party in interest may attend the Auction upon two (2) days' notice to the Debtors.

    a. only the Stalking Horse Bidder and such other Qualified Bidders who have timely submitted Qualified Bids will be entitled to make any Subsequent Bids at the Auction;

    b. each Qualified Bidder shall be required to confirm on the record that it has not engaged in any collusion, within the meaning of Section 363(n) of the Bankruptcy Code, with respect to any bids submitted or not submitted in connection with the Sale;

    c. at least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors' investment banker whether it intends to attend the Auction <u>and</u> all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction; *provided* that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the selection of the Successful Bidder and Back-Up Bidder (each, as defined below) at the conclusion of the Auction.  Prior to the time scheduled for the commencement of the Auction (as provided in these Bidding Procedures), the Debtors may provide to all Qualified Bidders (including the Stalking Horse Bidder) copies of each Qualified Bid and identify to them the Qualified Bid that the Debtors believe, after consultation with the Consultation Parties, is the highest or otherwise best offer for the Assets (the "<u>Starting Bid</u>");

    d. all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

e.  the Debtors, in consultation with the Consultation Parties, may modify, employ and announce at the Auction additional or amended procedural rules that are reasonable under the circumstances for conducting the Auction, *provided* that such rules (i) are not materially inconsistent with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, (ii) do not purport to abrogate or modify the Stalking Horse APA or any Bid Protections and (iii) are disclosed to each Qualified Bidder attending the Auction;

f.  bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each, a "<u>Subsequent Bid</u>") providing a value to the Debtors' estates of at least $100,000 above the prior bid or collection of bids (the "<u>Continuing Minimum Overbid Amount</u>").  After each round of bidding, the Debtors, after consultation with the Consultation Parties, shall announce the bid (and the value of such bid) that they believe to be the highest or otherwise bid (each, the "<u>Leading Bid</u>").

g.  a round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid from the previous round, which must include a Continuing Minimum Overbid Amount; and

h.  except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each Subsequent Bid (including any Subsequent Bid by the Stalking Horse Bidder), the Debtors may give effect to the Bid Protections as well as any additional liabilities to be assumed by a Qualified Bidder, and any additional costs which may be imposed on the Debtors.

## I. <u>Selection of Successful Bid</u>

The Debtors, in consultation with the Consultation Parties, may provide the Qualified Bidders with an opportunity to submit a "best and final" bid before concluding the Auction.  Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will review and evaluate each Qualified Bid submitted at the Auction (including by the Stalking Horse Bidder) in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer (one or more such bids, collectively the "<u>Successful Bid</u>" and the bidder(s) making such bid(s), collectively, the "<u>Successful Bidder</u>"), and communicate to any Stalking Horse Bidders and the other Auction participants the identity of the Successful Bidder and the material details of the Successful Bid.  The determination of the Successful Bid by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

The Qualified Bidder(s) with the next highest or otherwise best Qualified Bid or collection of Qualified Bids, as determined by the Debtors, in consultation with the Consultation Parties, will be required to serve as a back-up bidder (each, a "<u>Back-Up Bidder</u>") and keep its bid open and irrevocable until the earlier to occur of (i) thirty (30) days after the Sale Hearing and (ii) closing on the Successful Bid with the Successful Bidder.  If the Successful Bidder fails to consummate

the Sale, the Debtors will be authorized to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court. Any Stalking Horse Bidder shall not be required to serve as the Back-Up Bidder unless the Stalking Horse Bidder submits a Subsequent Bid at the Auction.

After announcing the Successful Bidder and the Back-Up Bidder on the record, the Debtors shall close the Auction. Following closing of the Auction, neither the Debtors nor its representatives shall initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any person in connection with any sale or other disposition of the Assets.

The Debtors will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing. The Sale Order approving any such Successful Bid(s) by the Bankruptcy Court shall be satisfactory in form and in substance to the DIP Agents.

## J. **Return of Deposits**

All Good Faith Deposits shall be returned to a bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder no later than five (5) Business Days following the conclusion of the Auction.

## III. **SALE HEARING**

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin on or before **July 25, 2023 at \_:00 a./p.m (prevailing Eastern Time)**, subject to the availability of the Bankruptcy Court, to approve and authorize the Sale to the Successful Bidder. Subject to the terms of any Stalking Horse APA, the Debtors reserve the right to change the date and/or time of the Sale Hearing (or any other dates related to the Sale) to achieve the maximum value for the Assets.

10894478v.6

**Exhibit 2**

**Form of Sale and Publication Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Rockport Company, LLC, *et al.*, [1] | Case No. 23-10774 (BLS) |
| Debtors. | (Jointly Administered) |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on June 14, 2023, (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on June 15, 2023, the Debtors filed a motion (the "Bidding Procedures Motion")[2] with the Court seeking, among other things, (a) an order, (the "Bidding Procedures Order"), (i) authorizing and approving the proposed bidding procedures to be used (the "Bidding Procedures") in connection with the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets"); (ii) authorizing the Debtors to designate one or more Stalking Horse Bidder(s) and scheduling a hearing to consider approval of such Stalking Horse Bid(s)(as defined in the Bidding Procedures Motion); (iii) scheduling the auction of the Assets (the "Auction"), and the hearing for approving the Sale (the "Sale Hearing"), (iv) approving the forms of notice and notice procedures related to the Auction, Sale and Sale Hearing (the "Notice Procedures"), (v) authorizing certain procedures (the "Assignment Procedures") related to the assumption and assignment of certain executory contracts and unexpired leases (the "Designated Contracts") in connection with the Sale, (vi) approving form and manner of notice of the Assignment Procedures; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the Sale free and clear of all liens, claims, interests and encumbrances (except for any permitted liens and encumbrances), (ii) authorizing the assumption and assignment of the Designated Contracts, and (iii) granted related relief. [D.I. 17].

**PLEASE TAKE FURTHER NOTICE** that, on [●] the Court entered an order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction. All interested bidders should

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: The Rockport Company, LLC (5670); CB Marathon Midco, LLC (6498); Rockport IP Holdings, LLC (6809); CB Footwear Services, LLC (6826); and Rockport UK Holdings Ltd. (3108). The Debtors' mailing address is: 1220 Washington Street, West Newton, MA 02465.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3] [D.I. ●].

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), will be held before the Honorable Brendan L. Shannon, United States Bankruptcy Judge for the District of Delaware, at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19081 on **July 25, 2023 at ___ _.m. (prevailing Eastern Time)**. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket of these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that Objections to the Sale, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **the Sale Objection Deadline (July 14, 2023 at 4:00 p.m. prevailing Eastern Time)**, and (d) be served on (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801-6108, Attn: M. Blake Cleary and L. Katherine Good email: bcleary@potteranderson.com and kgood@potteranderson.com; (ii) counsel to the Revolving Loan Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn: Jonathan Helfat, Valerie Mason, and Daniel Fiorillo, email: jhelfat@otterbourg.com, vmason@otterbourg.com, and dfiorillo@otterbourg.com); (iii) counsel to the DIP TL Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060 (Attn: Jennifer Feldsher and Matthew Furlong, email: jennifer.feldsher@morganlewis.com and matthew.furlong@morganlewis.com); (iv) Counsel to Reef Lifestyle, LLC, Ropes & Gray LLP, 1211 Avenue of Americas, New York, New York (Attn: Gregg M. Galardi email: gregg.galaradi@ropesgray.com); (v) counsel to the Stalking Horse Bidder, DLA Piper LLP, 444 West Lake Street, Suite 900, Chicago, Illinois (Attn: Richard A. Chesley email: richard.chesley@us.dlapiper.com); and (vi) proposed counsel to the Committee, (a) Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor New York, NY 10019 (Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah Carnes (scarnes@coleschotz.com)) and (b) Cole Schotz P.C., 500 Delaware Avenue, # 1410, Wilmington, Delaware 19801) (Attn: Justin R. Alberto (jalberto@coleschotz.com)).

## Important Dates and Deadlines

1. **Bid Deadline.** The deadline to submit a Qualified Bid is **July 13, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

2. **Auction.** In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of the Stalking Horse Bidder and subject to the satisfaction of further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Assets. The Auction, if one is held, will commence on **July 17, 2023 at 10:00 a/p.m. (prevailing Eastern Time)** either (i) in person at the office of Potter Anderson at

---

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

1313 North Market Street, Wilmington, DE 19801, or (ii) virtually or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties. The Debtors shall file a notice of any change in the date, time, or location of the Auction. If held, the Auction proceedings shall be transcribed, or audio recorded.

3. **Supplemental Sale Objection and Sale Objection Deadlines**.

   a. The deadline to file an objection with the Court to the Sale (other than objections related to the specific identity of a Successful Bidder other than the Stalking Horse Bidder) is **July 14, 2023 at 4:00 pm. (prevailing Eastern Time)** (the "Sale Objection Deadline").

   b. If the Auction is held, parties may object to the conduct of the Auction, the specific identity of the Successful Bidder (other than the Stalking Horse Bidder), or adequate assurance of future performance provided by a Successful Bidder (other than the Stalking Horse Bidder) at the Sale Hearing (as defined below) (the "Supplemental Sale Objection Deadline") until **July 20, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

4. **Sale Hearing**. A hearing (the "Sale Hearing") to approve and authorize the Sale to the Successful Bidder will be held before the Court on or before **July 25, 2023 at __:__ a/p.m. (prevailing Eastern Time)** or such other date as determined by the Court.

<u>**Contact Person for Parties Interested in Submitting a Bid**</u>

The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any party interested in submitting a bid should carefully read the Bidding Procedures and the Bidding Procedures Order and should contact the Debtors proposed Investment Banker:**

**Stifel, Nicolaus & Company ("Stifel"):**

**James Doak (james.doak@millerbuckfire.com);**
**Michael Kollender, (michael.kollender@stifel.com); and**
**Justine Mannering (manneringj@stifel.com).**

<u>**Obtaining Additional Information**</u>

Copies of the Bidding Procedures Motion, the Bidding Procedures and the Bidding Procedures Order, as well as all related exhibits, including the Stalking Horse APA and all other documents filed with the Court, are available free of charge on the Debtors' case information website, https://dm.epiq11.com/Rockport or can be requested by e-mail at

Rockport@epiqglobal.com, or by calling the toll-free information line at (888) 565-0258 or, if calling from outside the United States or Canada, at +1(503) 660-4989.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party who fails to make a timely Sale Objection on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any Sale Objection, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.*

*Any party who fails to make a timely Supplemental Sale Objection on or before the Supplemental Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any Supplemental Sale Objection, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.*

## NO SUCCESSOR LIABILITY

*The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in the Asset Purchase Agreement, for any liens, claims, encumbrances and other interests against or in the Debtors under any theory of law, including successor liability theories.*

Dated:  June [], 2023
      Wilmington, Delaware

*/s/ M. Blake Cleary*
M. Blake Cleary (No. 3614)
L. Katherine Good (No. 5101)
Katelin A. Morales (No. 6683)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  bcleary@potteranderson.com
       kgood@potteranderson.com
       kmorales@potteranderson.com

*Proposed Counsel for Debtors and Debtors in Possession*

4

**Exhibit 3**

**Form of Potential Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| The Rockport Company, LLC, *et al.*,[1] | Case No. 23-10774 (BLS) |
| Debtors. | (Jointly Administered) |

## NOTICE OF POTENTIAL ASSIGNMENT OF EXECUTORY CONTRACTS
## OR UNEXPIRED LEASES AND CURE COSTS

**PLEASE TAKE NOTICE THAT:**

1.      Each of the above-captioned debtors (the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on June 14, 2023 (the "Petition Date").

2.      On June 15, 2023, the Debtors filed a motion (the "Bidding Procedures Motion")[2] with the Court seeking, among other things, (a) an order, (the "Bidding Procedures Order"), (i) authorizing and approving the proposed bidding procedures to be used (the "Bidding Procedures") in connection with the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets"); (ii) authorizing the Debtors to designate one or more Stalking Horse Bidder(s) and scheduling a hearing to consider approval of such Stalking Horse Bid(s); (iii) scheduling the auction of the Assets (the "Auction"), and the hearing for approving the Sale (the "Sale Hearing"), (iv) approving the forms of notice and notice procedures related to the Auction, Sale and Sale Hearing (the "Notice Procedures"), (v) authorizing certain procedures (the "Assignment Procedures") related to the assumption and assignment of certain executory contracts and unexpired leases (the "Designated Contracts") in connection with the Sale, (vi) approving the form and manner of notice of the Assignment Procedures; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the Sale free and clear of all liens, claims, interests and encumbrances (except for any permitted liens and encumbrances), (ii) authorizing the assumption and assignment of the Designated Contracts, and (iii) granted related relief. [D.I. 17].

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: The Rockport Company, LLC (5670); CB Marathon Midco, LLC (6498); Rockport IP Holdings, LLC (6809); CB Footwear Services, LLC (6826); and Rockport UK Holdings Ltd. (3108). The Debtors' mailing address is: 1220 Washington Street, West Newton, MA 02465.

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

3.     Upon the closing of the Sale, the Debtors may assume and assign the Designated Contracts to the Successful Bidder.  A schedule listing the Designated Contracts that may potentially be assumed and assigned as part of the Sale is attached hereto as <u>Exhibit 1</u> (the "<u>Contracts List</u>") and may also be viewed free of charge on the Debtors' case information website, located at https://dm.epiq11.com/Rockport or can be requested by e-mail at Rockport@epiqglobal.com, or by calling the toll-free information line at (888) 565-0258 or, if calling from outside the United States or Canada, at +1(503) 660-4989.  In addition, the Cure Costs, if any, necessary for the assumption and assignment of such Designated Contracts are also set forth on the Contracts List.  ***Each Cure Cost listed on the Contracts List represents all liabilities of any nature of the Debtors arising under a Designated Contract prior to the closing of the Sale or other applicable effective date of the assumption and assignment of such Designated Contract, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale or other applicable effective date of the assumption and assignment of such Designated Contract***.

4.     **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A DESIGNATED CONTRACT THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE**.  Under the terms of the Assignment Procedures, unless otherwise provided in the Successful Bidder's Asset Purchase Agreement (as defined in the Bidding Procedures), at any time until one (1) day prior to the date of closing of the Sale, the Successful Bidder may remove a contract or lease from the Designated Contracts Schedule.  ***The presence of a Designated Contract listed on the Contracts List attached hereto as <u>Exhibit 1</u> does not constitute an admission that such Designated Contract is an executory contract or that such Designated Contract will be assumed and assigned as part of the Sale.  The Debtors reserve all rights, claims and causes of action with respect to the Designated Contracts listed on the Contracts List attached hereto as <u>Exhibit 1</u>.***

5.     Pursuant to the Assignment Procedures, objections to the proposed assumption and assignment of a Designated Contract (an "**Assignment Objection**"), including any objection relating to the Cure Cost or adequate assurance of any Stalking Horse Bidder's future ability to perform under the Designated Contract, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes is required to cure defaults under the relevant Designated Contract, (d) be filed by no later than **4:00 p.m. (prevailing Eastern Time) on [____], 2023**, and (e) be served on (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801-6108, Attn: M. Blake Cleary and L. Katherine Good email: bcleary@potteranderson.com and kgood@potteranderson.com; (ii) counsel to the Revolving Loan Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn:  Jonathan Helfat, Valerie Mason, and Daniel Fiorillo, email:   jhelfat@otterbourg.com,  vmason@otterbourg.com,  and  dfiorillo@otterbourg.com); (iii) counsel to the DIP TL Agent, Morgan, Lewis & Bockius, 101 Park Avenue, New York, NY 10178-0060  (Attn:  Jennifer  Feldsher  and  Matthew  Furlong,  email: jennifer.feldsher@morganlewis.com  and  matthew.furlong@morganlewis.com); (iv) Counsel to Reef Lifestyle, LLC, Ropes & Gray LLP, 1211 Avenue of Americas, New York,  New York (Attn: Gregg M. Galardi  email:  gregg.galaradi@ropesgray.com); (v) counsel to the Stalking Horse Bidder, DLA Piper LLP, 444 West Lake Street, Suite 900, Chicago, Illinois (Attn: Richard A.

Chesley email: richard.chesley@us.dlapiper.com); and (vi) proposed counsel to the Committee, (a) Cole Schotz P.C., 1325 Avenue of the Americas, 19th Floor New York, NY 10019 (Attn: Seth Van Aalten (svanaalten@coleschotz.com) and Sarah Carnes (scarnes@coleschotz.com)) and (b) Cole Schotz P.C., 500 Delaware Avenue, # 1410, Wilmington, Delaware 19801) (Attn: Justin R. Alberto (jalberto@coleschotz.com)); (collectively, the "Objection Notice Parties"). In the event that any previously-stated Cure Cost is modified, the Debtors will promptly serve a Supplemental Potential Assignment Notice.

6.     Adequate assurance of future performance information for the Stalking Horse Bidder is available by contacting counsel to the Debtors using the contact information set forth in paragraph 5 above. As set forth in the Bidding Procedures Order, the Debtors shall serve a copy of the Notice of Auction Results on you by mail no later than one (1) Business Day following the conclusion of the Auction. In addition, if you wish to receive a copy of the Notice of Auction Results by electronic mail you must provide a valid email address to the Debtors using the contact information set forth in paragraph 5 above.

7.     If, following the Auction, any Stalking Horse Bidder is not the Successful Bidder, then the Debtors will (a) file the Notice of Auction Results, which will, among other things, include the identity of the Successful Bidder, and (b) post such notice on the Case Management Website. Each such Counterparty will have an opportunity to object to the ability of such Successful Bidder to provide adequate assurance of future performance with respect to such Counterparty's Designated Contract (a "Supplemental Sale Objection"). Any Supplemental Sale Objection must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **4:00 p.m. (prevailing Eastern Time) on July 17, 2023** (the "Sale Objection Deadline"), and (d) be served on (i) the Objection Notice Parties and (ii) the Successful Bidder.

8.     The Court will hear and determine any Assignment Objections and Supplemental Sale Objections at the Sale Hearing or such other date that the Debtors, in consultation with the Successful Bidder, shall determine in its discretion with notice to the party having filed the Assignment Objection or Supplemental Sale Objection (subject to the Court's calendar).

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*UNLESS YOU FILE AN OBJECTION TO THE CURE COST AND/OR THE ASSUMPTION OR ASSIGNMENT OF YOUR CONTRACT OR LEASE IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE (A) BARRED FROM OBJECTING TO THE CURE COST SET FORTH ON EXHIBIT 1, (B) ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE COST AGAINST THE DEBTORS, THE STALKING HORSE BIDDER OR SUCH OTHER SUCCESSFUL BIDDER THAT IS GREATER THAN THE CURE COST SET FORTH ON EXHIBIT 1 AND (C) DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND/OR ASSIGNMENT OF YOUR CONTRACT OR LEASE.*

## OBTAINING ADDITIONAL INFORMATION

Copies of the Bidding Procedures Motion, the Bidding Procedures and the Bidding Procedures Order, as well as all related exhibits, including the Stalking Horse APA and all other

3

documents filed with the Court, are available free of charge on the Debtors' case information website, https://dm.epiq11.com/Rockport or can be requested by e-mail at Rockport@epiqglobal.com, or by calling the toll-free information line at (888) 565-0258 or, if calling from outside the United States or Canada, at +1(503) 660-4989.

Dated:  June [], 2023
       Wilmington, Delaware

*/s/ M. Blake Cleary*
M. Blake Cleary (No. 3614)
L. Katherine Good (No. 5101)
Katelin A. Morales (No. 6683)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  bcleary@potteranderson.com
        kgood@potteranderson.com
        kmorales@potteranderson.com

*Proposed Counsel for Debtors and Debtors in Possession*

4